

ORIGINAL    *Complaint*

COPY US DISTRICT COURT
NORTHERN DIST. OF TX
FILED

2022 JUN -9  AM 10: 34

DEPUTY CLERK    **MS**

1.    Plaintiff MARCUS WILLIS, ("the Plaintiff"), files this Complaint, against WESTERN POWER SPORTS ("defendant"), and alleges the following:

## NATURE OF ACTION

2.    This is a 42 U.S.C. §1981 and a Title VII of the Civil Rights Act of 1964 claim. Two major vehicles for redressing private racial discrimination are Title VII and 42 U.S.C. § 1981. Besides, the U.S. Supreme Court, in *Jones v. Alfred H. Mayer Co.*,392 U.S. 409 (1968) ruled that section 1 of the Civil Rights Act of 1866 applied to private acts of discrimination. Plaintiff therefore claims intentional racial discrimination, retaliation, wrongful termination, hostile work environment, defamation, whistleblowing and for future medical expenses, against the Defendants. Plaintiff was subjected to the aforesaid by the Defendants and was eventually unlawfully terminated.

## THE PARTIES

3.    The Plaintiff is an individual, a resident of the State of Texas and resides at 348 Cascade Dr., Red Oak, TX 75154.

4.    The Defendant WESTERN POWER SPORTS, INC. is a limited liability company in the business of distribution of aftermarket power sports products. The company is headquartered at 601 E. Gowen Road, Boise, ID 83716.

## JURISDICTION

2

5.      Jurisdiction is proper, pursuant to 28 U.S.C. § 1331 (federal question), 28 U.S.C. § 1343 (civil rights), and U.S. Code § 1332 (diversity of citizenship).

6.      The acts or omissions made the basis of this suit occurred in the State of Texas and in this judicial district, so venue is proper in this Court under 28 U.S.C. § 1391.

7.      No administrative exhaustion or other conditions precedent are required prior to the filing of claims under 42 U.S.C. §1981.

## FACTUAL BACKGROUND

8.      Plaintiff, who is African American, was hired by Diversified Solutions Temp Agency (hereinafter "Agency"). On or around July 5, 2020, Plaintiff was sent on a temp-to-hire position by Paola Orozco (hereinafter referred to as "Paola") recruiting manager and was told by Paola once Plaintiff reached his 700 hours the company would hire plaintiff at Defendant's center in Texas. Plaintiff was instructed by Paola to see Scott Barron (hereinafter referred to as "Scott") upon arrival. He assigned Lynette, his assistant, as the person of contact in regard to attendance.

9.      Plaintiff would report to Lynette in the event he would be late or would not be able to make it to work. However, when Plaintiff called Lynette to inform her that he would be late for work, the Agency informed him that Scott had reported Plaintiff as a no call, no show. This was confirmed by Lynette who stated that she (Lynette) reported to Scott in the event the plaintiff was late for work or would not make it to work.

10.     Plaintiff kept a 10-hours shift. In the course of his work, co-workers would come and tell Plaintiff that Scott talked to them about him. For instance, Plaintiff was approached by Sharon Jefferson (hereinafter referred to as "Sharon"), one of his female colleagues who told him that Scott had warned her against talking to him. Scott

3

had never approached Plaintiff regarding the issue. At the same time, Plaintiff had never had any issues or strained relations with Scott. It is also worth noting that at the work place, African Americans were denied the same privileges as non-African Americans. Notably, African Americans were prevented from talking at the work place yet there was no issue when non-African Americans talked.

11.     Plaintiff recalls one incident where Scott made a fool out of him in the presence of four co-workers when Plaintiff stated he could not find a machine part. Plaintiff had not been trained on how to retrieve the parts. The ridicule that followed the incident therefore left Plaintiff embarrassed.

12.     Another incident happened on or about August 18, 2020, when Scott accused Plaintiff of mislabeling a part. Plaintiff stated that the error might be caused by another department but Scott raised his voice and kept insisting that Plaintiff was responsible. Besides, there was no proof that Plaintiff was responsible for the mislabeling. Scott went further to warn Plaintiff that in the event it happens again, his employment would be terminated. He then told Plaintiff to go home. (**Exhibit 1- Time Sheet**).

13.     After the incident, Plaintiff went to inform the supervisor, Kenneth "Kenny" Pless (hereinafter referred to as "Kenny"), who was also Scott's Boss, of what just happened. He told Plaintiff to wait in the break room. While waiting, Kenny's assistant, Maria Martinez (hereinafter referred to as "Maria"), met Plaintiff at the break room and insisted that Plaintiff must leave even after Plaintiff explaining to her that he was waiting for Kenny. Eventually, Plaintiff had to leave when Kenny never appeared. (**Exhibit 2- Text exchanges between Plaintiff and Kenny**).

14.     As Plaintiff went to clock out, he noticed that Maria had entered Plaintiff's time out at 3pm, which was the time when the aforesaid incident happened. This

shows that Kenny had already informed Maria that Plaintiff should leave the workplace.**(Exhibit 3- Timesheet).**

15.    When Plaintiff returned the next day on August 19, 2020, Plaintiff sought an explanation from Kenny why Plaintiff was sent home the previous day. Interestingly, Kenny stated that he did not know and that he would have a talk with Scott and Plaintiff to have everything squared away. Kenny further intimated to Plaintiff that nobody at the work place liked Scott, including himself as his boss. At this point, Plaintiff told Kenny that it was time Scott was reported to corporate for his conduct.

16.    Shortly thereafter, Kenny, and Plaintiff met Scott to talk about the said concerns. Scott stated that he had no issue with Plaintiff and that he sent Plaintiff home because Plaintiff refused to accept responsibility for the mislabeling. Scott then informed Plaintiff that his pay would be decreased. Plaintiff's pay was $16 and was reduced to $14 after Scott made this statement. Earlier on, Plaintiff knew that his pay was confidential, and he was instructed to keep it that way. Therefore, Plaintiff sought to address the Agency regarding the matter since an agreement had been entered to that effect.

17.    On the day of the incident around 6:30 pm, after Plaintiff had completed his shift, Paola from the agency, informed Plaintiff that Scott had terminated his employment on the grounds of failure to follow instructions. Allegedly, Scott had terminated the employment of seven employees and Plaintiff was one of them. Paola informed Plaintiff that the agency would find him a new job, a lower paying one. Plaintiff told Paola "I cant work for someone that would let this happen.' And Paola stated "Ok, well good luck on your endeavors."**(Exhibit 4-Text messages exchange between Plaintiff and Paola)**

5

18.    Kenny told Plaintiff that Scott told to him that Plaintiff was terminated because he allegedly failed to perform his work duties. This was utterly false.

19.    On or about August 20, 2020, having no other avenue to seek redress, Plaintiff called Defendant's corporate office and spoke with Darnell Martin (hereinafter "Darnell), the human resources specialist. Plaintiff explained how Scott was discriminatory towards blacks and favored Spanish employees. Plaintiff went on to tell him about the incident that happened with the four co-workers and how Scott made him feel. Darnell then asked if Lynette was involved. Plaintiff told him she was standing in the crowd laughing. Darnell then said he would call Plaintiff back. Darnell noted that previously, a call was made with the same allegations against Scott, where Scott publicly ridiculed a black temporary employee because she was unable to push the pallet jack. The temporary employee and her husband, who was an employee, quit.

20.    After that, Plaintiff called the Texas Work Commission to file for unemployment since it was in the middle of a pandemic and he needed income to provide for his family. Kenny then called Plaintiff and informed him to come back to work and see him. Plaintiff asserts that Kenny called him because Darnell spoke with him. Accordingly, Plaintiff met Kenny on or about August 24, 2020. Kenny expressed his concern why Scott terminated Plaintiff yet he had said that there was no issue against Plaintiff. Kenny noted that Scott's action was retaliatory. Kenny told Plaintiff that he had a talk with Scott and that he was moving Plaintiff to another area. Plaintiff asked Kenny if he talked with Scott and neither had an issue why move Plaintiff, Kenny stated "You can learn more."

21.    Initially, everything went well in Plaintiff's new area of employment. Plaintiff was getting over time and was getting more skills and experience. However, it did not

6

take long before Plaintiff began facing issues again. The Spanish co-workers in the new area of employment were Scott's friends and Scott kept going there a lot more.

22.     On the second incident, on or about August 26, 2020, Kenny wanted Plaintiff to work the nightshift with the swing shift manager named Kentrell Joyner (hereinafter referred to as "Kentrell"). That day's entry on the time sheet was 12:00 am. However, on the following day, when Plaintiff checked the time sheet, he noticed that his entry for the previous day was changed.**(Exhibit 5- Timesheet)**

23.     Plaintiff noticed Kenny and Kentrell looking in his direction while engaging in a conversation. Shortly after, Kentrell approached Plaintiff and said that he was fired on the allegation that Plaintiff messed a box up. However, Plaintiff did not pack any boxes on his shift. He only scanned because Kentrell had trained him how to scan. Kentrell then came back and told Plaintiff to walk to the front because Plaintiff allegedly said something to him about the overtime. At this point, Plaintiff threatened to call corporate just like Plaintiff did in the situation with Scott. Plaintiff only did the overtime because he thought Kentrell needed help and it was a opportunity.

24.     After that, Plaintiff and Kentrell met Kenny at the break room where Plaintiff explained that he just got fired. Kentrell alleged that Plaintiff had used a curse word on him. However, this time Kenny sided with Kentrell. When Plaintiff reminded Kenny of his promise that nothing would go wrong at the new work location, Kenny threw his hands up.

25.     Plaintiff then told them he would leave but before that, he must inform Danell from corporate, of what just happen. Kentrell and Kenny looked at each other worried, but nobody answered the phone. Plaintiff never raise his fresh complaints and/or

7

concerns to corporate. However, he was not successful in contacting the corporate office.

26. Plaintiff had already reached out to Brenda Cartwright (hereinafter referred to as "Brenda"), the VP of Texas operations for Diversified Staffing about his time sheets. When the Plaintiff finally got the time sheets, he realized that they had been altered. Plaintiff pointed out the area on the time sheets where someone had used white out. Brenda made Plaintiff give a statement and told him that she (Brenda) would get a statement from Kenny, Kentrell , Scott and give Plaintiff copies in text . When Plaintiff asked for them she said she did not have them. So Plaintiff called Billing and asked to get another copy of time sheets to see if it would be the same. Plaintiff was told they would send but he never got them. When Plaintiff was in Brenda's office she told him not to go to labor law about the pay cause it would affect her, and if he wanted to go after the company go to the EEOC. Plaintiff told her that he would go to both because his rights were violated and he was entitled to the payment of his money.**(Exhibit 6- Text messages exchange between Plaintiff and Brenda)**

27. Plaintiff was awarded partial amounts of the money by the Texas workforce Commission, but was told no charges could be brought against the company they would just be fined and Plaintiff received the money from the pay difference. (*See* **Letter showing Plaintiff was awarded-** attached in the Appendix as **Exhibit 7**).

28. After his employment was terminated , Plaintiff applied for unemployment benefits which he received for sometime. When he exhausted his benefits, he tried to find a job to no avail. Plaintiff fell into depression. He reached out to a mental health provider who racially profiled him and violated HIPPA Law. Plaintiff also filed a

complaint against the clinic and received a response from the Civil Rights Office. (*See*

**Letter from the Civil Rights Office**- attached in the Appendix as **Exhibit 8**).

## CAUSES OF ACTION

### COUNT 1

#### Racial Discrimination

29.     Plaintiff hereby incorporates all foregoing paragraphs as though set out in full herein.

30.     Plaintiff is an African-American citizen of the United States and a resident of the state of Texas. Plaintiff therefore belongs to a protected group.

31.     African-Americans at the Defendant's facility were subjected to a stricter level of scrutiny than similarly situated Spanish and white co-workers. African-Americans were repeatedly reprimanded and disciplined for relatively minor mistakes. The same behavior from similarly situated Spanish and white employees was largely ignored even when discovered.

32.     The Defendant's conduct as alleged at length herein constitutes discrimination based on race in violation of Title VII. The stated reasons for the Defendant's conduct were not the true reasons, but instead were pretext to hide the Defendant's discriminatory animus. Further, Defendant is liable under Title VII for such discrimination because it knew, or should have known, of the racial discrimination but failed to take prompt and effective remedial action. Instead, it did just the opposite. It condoned, ratified and otherwise allowed the racially discriminatory behavior to continue.

### COUNT 2

#### Retaliation

33.    Plaintiff hereby incorporates all foregoing paragraphs as though set out in full herein.

34.    As a result of the Plaintiff's good faith complaints and opposition to race discrimination and racial harassment at the Defendant's facility, the Defendant's staff retaliated against the Plaintiff by subjecting him to stricter scrutiny than his co-workers, to demeaning and hostile treatment, to wholly unwarranted negative performance feedback, to being subjected to unwarranted discipline, and, ultimately, his termination.

35.    The Defendant's conduct as alleged above constitutes retaliation against the Plaintiff because he engaged in activities such as whistleblowing, which is protected by Title VII. The stated reasons for the Defendant's conduct were not the true reasons, but instead were pretext to hide the Defendant's retaliatory animus.

### COUNT 3

#### Hostile Work Environment

36.    Plaintiff hereby incorporates all foregoing paragraphs as though set out in full herein.

37.    Defendants created an environment which encouraged and fostered a hostile work environment for Plaintiff due to his race. Such conduct was ongoing, open, and notorious. Simply put, racial discrimination is deeply embedded in the Defendant's facility. It is open, active, and unashamed. The harassment, abuse and discrimination are encouraged by Defendant's management refusal to stop the misbehavior.

38.    The Defendant's conduct as alleged above constitutes hostile and abusive working environment in violation of Title VII. The stated reasons for the Defendant's conduct were not the true reasons, but instead were pretext to hide the Defendant's

discriminatory animus. Further, Defendant is liable under Title VII for such harassment and discrimination because it knew, or should have known, of the racial harassment and discrimination but failed to take prompt and effective remedial action. Instead, it did just the opposite. It condoned, ratified and otherwise allowed the racially harassing and discriminatory behavior to continue.

## COUNT 4

### Defamation

39.    Plaintiff hereby incorporates all foregoing paragraphs as though set out in full herein.

40.    Certain statements about Plaintiff were published to other employees in the Defendant's facility. For instance, Scott stated that he terminated Plaintiff because Plaintiff allegedly failed to work on the dock or truck but Plaintiff labeled, which allegation was utterly false. Also, Scott erroneously stated, in the presence of around four co-workers, that Plaintiff had misplaced a machine part.

41.    Scott made the said false statements with malice. He acted with malice because he discriminates against African American employees.

42.    Plaintiff has been damaged by the false statements because the statements have subjected Plaintiff to hatred, ridicule, contempt, and disgrace.

43.    Plaintiff has also been injured by the statements because Plaintiff lost his job.

44.    Plaintiff is further damaged by the statements because they attribute conduct, characteristics, and conditions incompatible with the proper exercise and/or practice of Plaintiff's job.

## COUNT 5

### Wrongful termination

11

45.     Plaintiff hereby incorporates all foregoing paragraphs as though set out in full herein.

46.     Plaintiff was employed at the Defendant's facility.

47.     At the Defendant's facility, Plaintiff was subjected to discriminatory conduct. Plaintiff is African-American. African Americans were treated unfairly at Defendant's institution. Ultimately, Plaintiff's employment was terminated because of his membership in a protected class recognized in the United States.

48.     The Defendant's conduct as alleged above constitutes wrongful termination based on Plaintiff's racial affiliations.

### COUNT 6

### Whistle blowing

49.     Plaintiff hereby incorporates all foregoing paragraphs as though set out in full herein.

50.     The Plaintiff engaged in activity protected by the whistleblower protection law(s). Notably, the Plaintiff made good faith complaints and opposition to race discrimination and racial harassment at the Defendant's facility.

51.     The Defendant knew about, or suspected, that the employee engaged in the protected activity. Specifically, the Defendant knew that Plaintiff was making good faith complaints and opposition to race discrimination and racial harassment at the Defendant's facility.

52.     The Defendant took adverse action against the Plaintiff. Specifically, the Defendant's staff retaliated against the Plaintiff by subjecting him to stricter scrutiny than his co-workers, to demeaning and hostile treatment, to wholly unwarranted

negative performance feedback, to being subjected to unwarranted discipline, and, ultimately, his termination.

53.    The employee's protected activity motivated or contributed to the said adverse action.

## PARTICULARS OF INJURY/DAMAGE

54.    By reason of the facts and circumstances stated above, Plaintiff has suffered loss of income, loss of benefits, loss of career opportunity, loss of career investment, and loss of advancement. Notably, after his employment was terminated, Plaintiff applied for unemployment benefits which he received for some time. When he exhausted his benefits, he tried to find a job to no avail. Plaintiff fell into depression. He reached out to a mental health provider who racially profiled and violated HIPPA.

55.    Further, as a consequence of the unlawful and outrageous actions of Defendants, Plaintiff has suffered humiliation, emotional pain and suffering, inconvenience, loss of enjoyment of life, irritation and mental anguish. Plaintiff therefore seeks reinstatement, recovery, compensatory, and equitable (i.e., back pay and front pay) damages, as well as attorney's fees, and costs and pre and post judgment interest in the maximum amounts allowed by law.

## JURY TRIAL DEMANDED

56.    Plaintiff demands jury trial of all issues.

## PRAYER AND RELIEF

**WHEREFORE**, Plaintiff **MARCUS WILLIS**, respectfully request that this Court enter judgment in his favor and as against Defendant as follows:

1. Judgment against the Defendant finding them liable for racial discrimination, retaliation, defamation, wrongful termination, hostile working environment, and whistle blowing.

2. Award actual damages, including appropriate amounts of back pay and front pay and the money lost since Plaintiff lost his employment in the amount of **$500,000,000**.

3. Award compensatory for race discrimination, retaliatory discharge, defamation wrongful termination, and hostile work environment, and whistleblowing.

4. Award special damages for future medical expenses.

5. Award costs and reasonable attorney

6. Grant any and all appropriate relief, which the Court deems necessary and appropriate.

DATED: 6/7/22

Respectfully submitted,

Marcus Willis
348 Cascade Dr.,
Red Oak, TX 75154.

## VERIFICATION

Marcus Willis, being duly sworn, deposes and says:

I am the Plaintiff in the above-entitled action. I have read the foregoing complaint and know the contents thereof. The facts are true to my knowledge, except as to matters therein stated to be alleged on information and belief, and as to those matters, I believe to be true.

_Signature_

_Printed Name_

Plaintiff

Sworn to before me this

7 day of June [month] 2022 [year]

Notary Public

CHELSEY MOORE
NOTARY PUBLIC STATE OF TEXAS
MY COMM. EXP. 01/07/2024
NOTARY ID 13048749-0

15

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that, on this _7_ day of _June_, 2022, a copy of the

foregoing was to:


Western Power Sports,
601 E. Gowen Road,
Boise, ID 83716


Date _6_ / _7_ 2022

Marcus Willis

348 Cascade Dr.,

Red Oak, TX 75154.

# UNITED STATES DISTRICT COURT

## FOR THE NORTHERN DISTRICT OF TEXAS

### WITNESS AFFIDAVIT

I SHARON JEFFERSON("Affiant"), of address 627 Antiono Lane Waxahachie, Texas 75165 who being duly sworn according to law, do make an oath and states as follows:

1. I am adult of sound mind.
2. I worked at the Western Power Sports together with Marcus Willis (hereinafter "Marcus").
3. I personally was accused by Scott Barron(hereinafter "Scott"), for mislabeling products that I knew I wasn't responsible for on different occasions.
4. I attest that Scott treats African-American associates poorly.
5. Scott did not allow Marcus and I to talk while we were working on the floor. It was okay for other colleagues of non-African American descent to speak while working.
6. On one incident, Scott stood at a forklift and observed Marcus and I talk. After the conversation, Scott approached me and demanded to know what we were talking about. He concluded that we were talking personal matters while at work, even after me informing him that my discussion with Marcus was work related.
7. Scott attempted to walk me out of the warehouse but was stopped by Kenny.
8. Kenny informed both Marcus and I that we were guaranteed a full-time position after we complete 700 hours, because we knew the job.
9. Upon my information and belief, I have duly stated any and all information I have with regards to Scott's blameworthy conduct.
10. I agree to testify, declare, depose, certify or acknowledge the truth of any or all of the statements contained herein before a court of competent jurisdiction, officer or person thereof.

1

11. I recognize that any false statement or other misrepresentation made in this Affidavit, may subject me to civil and/or criminal penalties.

I hereby swear under the penalty of perjury that the facts referred to in this affidavit are true, complete and correct.

**Signature of the Affiant:**

Sharon Jefferson

[Signature]

**For the Notary:**

Sworn to before me this 23 PD day of May 2022

[Signature]

Notary Public

State of [Enter State] Texas

My Commission Expires: 09/22/2024

REY LUNA
NOTARY PUBLIC STATE OF TEXAS
MY COMM. EXP. 09/22/2024
NOTARY ID 13076293-1

2

## Appendix

**Exhibit 1- Timesheet**

**Exhibit 2- Text exchange between Plaintiff and Kenny**

**Exhibit 3- Timesheet**

**Exhibit 4- Text exchange between Plaintiff and Paola**

**Exhibit 5- Timesheet**

**Exhibit 6- Text exchange between Plaintiff and Brenda**

**Exhibit 7- Letter showing Plaintiff was awarded**

**Exhibit 8- Letter from the Civil Rights Office**
(including documents from Child
and Family Guidance Center)

17

# Diversified Sourcing Solutions

**PAYROLL TIMESHEET**

Employee Name: _Marcus Willis_

27.30

## WRITE THE CORRECT TIME OF CLOCK IN AND OUT

| | Date | Time In | Lunch Out | Lunch In | Time Out | HRS |
|---|---|---|---|---|---|---|
| SUN | | | | | | |
| MON | 8/17/20 | 7:00 AM | 11:00 A | 11:45 | 5:30 | 9:45 |
| TUES | 8/18/20 | 7:00 AM | 11:00 A | 12:00 | 4:15 | 8:15 |
| WEDS | 8/19/20 | 7:00 | 11:00 | 12:00 | 5:30 | 9:30 |
| THURS | | | | | | |
| FRI | | | | | | |
| SAT | | | | | | |

Total Hours Worked _27.30_

Employee Signature/Date _____

Supervisor Signature/Date _____





AT&T 📶 🛜          7:43 PM          🔋 32%

‹ 107

**K**

Kenny Muney!

Then someone signed me out after u told me to wait

Man can I please call corporate on him

Where you at my apologies  got caught up on floor

I jus left

Come holla at me tomorrow in morning

👌🏿

Bet

Den Maria gonna sign me out I

 AT&T 📶 7:43 PM @ 32% 🔋



**Kenny Muney!**

Den Maria gonna sign me out I didn't touch it but can you make sure u verify I left at 400

415

What time u get in tomorrow

I got you

Will talk with her too

I get in at 8

So do I come in reg time

I want to go to corporate on him so bad bro

Cuz c I ain't have to worry about him makin it like u showing fav. That's coming next watch

  

      



Bet

Yes come in regular time

I'm sorry to bother you bro but I
need to holler at you

Ok give me a few just getting
home.

Ok bro I really appreciate it bro









.ı AT&T 📶   7:43 PM   @ 31% 🔋





Kenny Muney!

Wed Aug 19

**Hey can we catch up in morning tending the kids right now unless it can't wait?**

He fired me

**Huh? Why?**

The temp agency said sum about I didn't follow instructions or something

He jus do what he want we all said we was good and u fire me after I clock out.

And sumbody went back and changed my time back to 300. That's some wrong shit. That's the one that need to b fired. I'm calling corporate. How can I

    Message   

      

 AT&T 📶     7:43 PM     ⏸ 31% ▮



Kenny Muney!

said we was good and u fire me after I clock out.

And sumbody went back and changed my time back to 300. That's some wrong shit. That's the one that need to b fired I'm calling corporate. How can I come back in thru the door is it away?

Hurt his feelings den ain't no temp

Dat shit super wrong, he supposed to be fired! Along time ago

White boy going to corporate too. I jus got off the phone wit him. He said when he first started Scott was laughn cuz he never used a pallet jack. Bro that's two people one black one

  Message 

      



AT&T 📶 🤖    7:43 PM    31% 🔋

‹ 107

Kenny Muney!

already happened they gonna get rid of him

Will address in morning didn't know you was let go..

The temp lady said he let 7 people go

I was one of them. But enjoy your night bro sorry to bother you.

Thu, Aug 20

Let me what's up. Cuz I'm making that call today

Going in to talk with Scott on your departure reason now.

Calling u from other phone

I can hear on this

       



**Kenny Muney!**

Let me what's up. Cuz I'm making that call today

Going in to talk with Scott on your departure reason now.

Calling u from other phone

I can hear on this

Thu, Aug 20, 1:—, ?AM

What's up

Hey sorry about that got busy once I got in I've spoken with Scott and he mention about a truck issue yesterday where you stated you didn't want help.

Can u talk on the phone

Delivered

   

      

# Diversified Sourcing Solutions

## PAYROLL TIMESHEET

**Employee Name:** Marcus Willis

## WRITE THE CORRECT TIME OF CLOCK IN AND OUT

| | Date | Time In | Lunch Out | Lunch In | Time Out | HRS |
|---|---|---|---|---|---|---|
| | | 00 AM | 11:00 A | 11:45 | 5:30 | |
| | | 00 AM | 11:00 A | 12:00 | 3:00 | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |

10:28

< **Paelo Diverse** >

Text Message
Wed, Jul 1, 9:11 PM

Hello Marcus. Christina gave me ur number for the job tmrw

Can u start at 9am?

Thu, Jul 2, 8:59 AM

Hi!!! I'm sorry I BBQ last night. I didnt check my phone until this morning. I sent the email response. I have only worked for temp agency last past 3 years.

If I get the job what will I be doing?

Thu, Jul 2, 1:09 PM

Receiving

Can u start Sunday? 8am?

Thu, Jul 2, 2:34 PM

I'm done

Sunday 8am

 

     

10:28

**‹**     **Paelo Diverse**

For sure.



Thu, Jul 9, 7:56 PM



Fri, Jul 10, 8:36 AM

Yes

Fri, Jul 10, 11:12 AM

How much am I getting paid 16 right?

Fri, Jul 10, 12:27 PM

U there

What shift are you on

Do not discuss ur oay with anyone else. This has been a big issue at wps and can result in termination.

1st shift yes 16

  

     

10:28

‹ **Paelo Diverse**

1st shift yes 16

Fri, Jul 10, 2:35 PM

No I didn't at all when the guy came to me about it I asked him like why would he discuss his pay or even worried about the other guy. I said he probably was jus telling him that so he would know what he was getting. And I left it at that

Ok cool ty

Fa sho

Wed, Jul 15, 6:18 PM

Hi how are you? I was trying to c when I get paid

Friday

Wed, Jul 15, 9:48 PM

Ok thank you

Fri, Jul 17, 6:46 AM

   Text Message  

      



10:28

**Paelo Diverse**

Good Morning! This is Marcus I'm gonna be a lil late but I'm jus letting you kno

But I'm going in.

Fri, Jul 17, 9:03 AM

Ok got it.

Fri, Jul 17, 10:17 AM

Got here at 745

Fri, Jul 17, 1:23 PM

Ty!

Fri, Jul 17, 2:31 PM

Yw

Fri, Jul 24, 7:43 AM

Hey good morning I didn't go in today but I let the supervisors i I needed to b off today.

But I'm working Sunday

Ok

10:28

‹        **Paelo Diverse** ›

Ok.

Mon, Aug 3, 11:07 AM

So are u not at work today?
Scott wants to know.

Mon, Aug 3, 2:36 PM

I'm sorry I will make sure I let u
know as well

Thu, Aug 6, 6:56 AM

Good Morning. I woke up late
I'm running late. Jut giving you
heads up

Ok

I'm sorry

I'm about to pull up now

Thu, Aug 6, 9:28 AM

Ok please try ur best to not
make this a habit. I would hate
for u to lose this opportunity for
tardiness or attendance. Scott

  

      

10:28

**Paelo Diverse**

tardiness or attendance. Scott
is very strict with this.

Mon, Aug 10, 11:36 AM

Ok I will

Thu, Aug 13, 8:41 AM

Gm

Can u explain why my check
was less when u get time

Wed, Aug 19, 8:02 AM

Gm.

Did Scott reach out to you?

Yes

Ok about what?

I'm not sure I'm not in the
office. He spoke to cynthia I
know.

I will check when I get back in.

Is there an issue?

10:28

< **Paelo Diverse**

> Ok about what?

I'm not sure I'm not in the office. He spoke to cynthia I know.

I will check when I get back in.

Is there an issue?

> Im trying to figure out. He sent me home no explanation and I'm here today nothing been said

Ok. I'll find out

Just do ur job and stay calm

> I am I will call you at lunch it's more

> If u have time

Wed, Aug 19, 6:47 PM

Hey let me know when u can answer.



10:28

< **Paelo Diverse** ›

Is this for me?

Did I miss a call from you?

Yes.

Thu, Aug 20  9:28 AM

You said Scott had let Seven people go?

I found out I was the only one

Thanks a lot Paula

Paelo

We had a total of 5

That he let go?

Wps in general idk what department. Let me know if I can help u find additional work.

You really think I would work for y'all?

10:28

< **Paelo Diverse** >

We had a total of 5

That he let go?

Wps in general idk what department. Let me know if I can help u find additional work.

You really think I would work for y'all?

Ok well good luck in your future endeavors.

Good luck in yours too. 😉

Tue, Sep 1, 8:23 AM

Gm. I'm gonna be late to work I have to go get my insurance renewed and they have to take pictures of car as soon as I'm done I will be to work. I text Kenny and let him kno. Thank you

Ok

# **Diversified Sourcing Solutions**

PAYROLL TIMESHEET

Employee Name: Marcus W

## WRITE THE CORRECT TIME OF CLOCK IN AND OUT

| | Date | Time In | Lunch Out | Lunch In | Time Out | HRS |
|---|---|---|---|---|---|---|
| SUN | | | | | | |
| MON | 8/24/20 | 10:30 A | 11:00 A | 11:45 | 5:30 p | 6:15 |
| TUES | 8/25/20 | 8:00 A | 11:00 A | 12:00 | 5:30 p | 8:00 |
| WEDS | 8/26/20 | 8:00 A | 1:00 P | | | 8:00 |
| THURS | 8/27/20 | 8:00 A | 1:00 A | 2:00 p | 5:00 | 8:00 |
| FRI | 8/28/20 | 8:30 A | 1:30 P | 2:30 p | 5:21 p | 7:51 |
| SAT | | | | | | |

Total Hours Worked _____33.43_____

Employee Signature/Date _____

Supervisor Signature/Date _____ 8/31/20

**10:38**

## ‹ +1 (903) 257-8857 ›

iMessage
Wed, Sep 16, 12:21 PM



Thu, Sep 17, 5:54 PM

Your call dropped I guess.... I tried to call you back....

Sun, Sep 20, 10:07 AM

Marcus it's Brenda.....

I am and have been having an amazing time catching up with an old friend..... I would love to be able to stay one more night but I know we have a meeting-appointment in the morning at 9am.  I'm asking....... would you be willing to move it to Tuesday at 9am?

It would mean a lot to me but I

   

      

**+1 (903) 257-8857**

at 9am!

It would mean a lot to me but I want to make sure you would be ok with the change.

Please let me know.

:) :)

I need those paper

We can meet whenever but I need those papers. I respect that you want to enjoy your weekend but I'm jobless. I'm jus saying I been waiting on those papers. I would have got them Friday

I'm trying to see them so I can contact the right people

It wasn't fair how they did me and I'm gonna show the news if I have to to show them that they can't do this

I have so shame or fear













**10:38**

‹    **+1 (903) 257-8857**    ›

Ok, I understand.  I could get the timesheets to you Monday via email. Or maybe we just meet later on Monday like at 1pm..... I'll figure it out.

Thank you.

👍

How about this get me the papers and I can c you later that day

You sure

What's your email?

willishm08@aol.com

👍

I need to get the ball rolling one thing about me I'm very detail and precise

So are u coming back tomorrow

It can be later if u want

It's up to u

   

      

10:38

**+1 (903) 257-8857**

Yes I will... if we can meet later.

1 or 2 would be awesome!  I can leave her in the am and drive there to meet with you....

That would give one more night to enjoy.... :) thank you!

*here

OK

U must b livin your best life 😣

Not really.... I work all the time but had the opportunity to visit with my BFF whom I haven't seen in over 6 years when she attended my daddy's funeral...

Just girls catching up on life.... been friends since we were 10 years old.....

I get it, jus giving you a hard time. Well enjoy see you tomorrow evening

   

      

**10:39**

< **+1 (903) 257-8857** >

Thank you so much for your
understanding. :)

No problem thank you for
communicating with me

Absolutely!

Mon, Sep 21, 3:46 AM

Did you receive the email?

I didn't kno you sent it checking
now

Yes

Yes I got them thank you

Are we still meeting

Yeah!

Ok well can we make it like 5 or
so I kno u probably need to go
home being you jus got in.

I might have a errand to do

  iMessage 

      

10:39

**+1 (903) 257-8857**

I might have a errand to do around that time 100 so I will jus keep you posted if something changes. But same time 9 am?

Ok, are we can do tomorrow at 9am.  I have that opened as well. :)

We can do today where you want to meet?

Are u driving

5pm at the office as I will be traveling

Ok. Today?

Ok I jus didn't want to be texting u

If u were driving



I have car play in my car so it's voice command

  

      

10:39

< **+1 (903) 257-8857** ›

No worries thank you for caring

No

So 5 today at office?

Is that what u was saying

Yes

Thank you

Seen you then

Mon, Sep 21, 4:55 PM

I'm here. I didn't kno you wanted me to call you

I'm still driving.... we spoke on the phone and I told you due to the rain I was still driving.... you told me to call you when I got closer as you were in Ennis then you could head that way...

You told be to be careful.. :)

   

      

10:39

< **+1 (903) 257-8857** ›

I'm sorry for the misunderstanding



No problems at all.... I'm still further out...

Jus call when u get closer

Can you meet in the morning? I can come to Ennis or wherever If needed.

Ok lol thanks!

I appreciate it... this weather/ rain was crazy!

Wait

I still want to meet

It's cool. I'm calling there corporate tomorrow. Whenever



   

      

**10:39**

**+1 (903) 257-8857**

It's cool. I'm calling there corporate tomorrow. Whenever you do your investigation you can contact me. Did you look at the time sheets?

I've already started it just need your information in writing..... They have provided statements of the events as well..... that's what I want to go over and discuss with you that why I was trying to make it by 5 but just couldn't...... Can you do 9am in the morning?

Yes, I looked that the timesheets....

Did you view the timesheets?

I sent them first thing this morning to you. :)

Yes did u c anything wrong wit them

Mon, Sep 21, 6:11 PM

   

      

10:39

< **+1 (903) 257-8857** ›

Mon, Sep 21, 6:11 PM

No..... but I didn't  total amounts or anything at this time.

Tue, Sep 22, 9:15 AM

Are you coming?

I'm sorry I jus woke up. Yea but I need to jump in the shower and then I can head that way. Before I do I can call to make sure you are there. I'm coming from Beford

I'm sorry, was up late.

I will be in Dallas at Farmers Branch tomorrow if that is closer to you.

11498 Luna RD Farmers Branch

We have an office there as well.

Does Dallas work better for you?

  

      

10:39

**+1 (903) 257-8857**

Does Dallas work better for you?

It's actually 23 miles from Bedford to the Farmers Branch office and 49 to Waxahachie.  I will not be in the office this afternoon as I will be heading back to Corsicana for a meeting at 1pm.

I have an appointment with someone at 10:30am tomorrow so I can meet before or after that I'm the Farmers Branch location.

I guess

Morning

What time u gonna be there

I will be there waiting

We are waisting time

By 9am

   

      

10:39

< **+1 (903) 257-8857** >



Tue, Sep 22, 12:45 PM

I would rather meet in person

Tue, Sep 22, 1:51 PM

Ok

Wed, Sep 23, 9:22 AM

Are you coming in this morning?

Yea

U said u had someone at. 1030

I do.... :)

So I'm headed and jus text me when you ready for me to come

  

      

10:39

‹ **+1 (903) 257-8857** ›



I'm available whenever

Suite 207

Upstairs



I'm here

Thu, Sep 24, 2:37 PM

Did you get those other statements yet? Just want to make sure you don't forget it.

When u can

Thank you

Thu, Sep 24, 3:57 PM

   

      

10:39

< **+1 (903) 257-8857** >

I haven't forgotten. :) just been
busy....

Mon, Sep 28, 5:16 PM

Tue, Sep 29, 8:35 AM

Can u talk

About 9:15 I can.

Ok thank you

Wed, Sep 30, 6:27 PM

Any luck on the papers

And can you give me my hours
as far as how many I had at
work with this assignment

   

      

**10:39**

< **+1 (903) 257-8857** >

No yet and yes I can get you
the hours

Marcus I'm busy and have other
items I work on......

I will request your hours from
home office tomorrow.....

I still need to speak with my risk
department to ensure I can
provide you copies.  I don't see
there being an issues at all but
I've just been busy.

No I'm asking like what else do
we need I'm sorry if u took it
like that

No worries... thank you... I
appreciate you and working
with me

No problem

Wed, Oct 7, 7:52 PM

  

       

10:39

< **+1 (903) 257-8857** ›

Wed, Oct 7, 7:52 PM

Hi Brenda

Can you send what you have so I can start my process.

And send me your Boss number.

Marcus, I've provided all that I need to at this time and the last time we spoke you told me you were moving forward with what you need to do regardless of anything I said or shared with you. We agreed to disagree as you didn't not want to hear what I was trying to explain. You are welcome to contact DSS corporate office in Douglasville GA, and speak to the Risk Department.

I wish you well in your future.

Ok. Well I have text where you said you would give me the paperwork. Anytime I provide a

  iMessage 

      

10:39

‹    **+1 (903) 257-8857**    ›

> Ok. Well I have text where you said you would give me the paperwork. Anytime I provide a statement I'm entitled to that. Right? But I will talk to your boss and let her know the whole situation. I feel Something is not right with my time sheets and my pay. Thank you.

I provided all your time and time sheets..... I held a meeting with you to go over the statements with you.

I feel I've done everything possible to help you understand the situation.

You can ask the Risk Department about the statements as I don't know.

Again, I've answered you on the weekends, after hours, I've provided you time sheets, I held a meeting to discuss, I've tried to explain, and yet nothing

  

      

**10:40**

‹ **+1 (903) 257-8857** ›

During our meeting, you told me your time was correct.



That's is not what you said to me in our meeting....

However, again you are welcome to contact Risk at Coro office.

Thank you Marcus.

* Corp office...

I saved that part to see if you where goin to be fair.

Ok, Marcus. I'm not sure what your saying but ok.  I didn't look into it further because you said they were correct.

   
      

**10:40**

‹   **+1 (903) 257-8857**   ›

they were correct.

Marcus- please contact Risk from this point moving forward. I've done everything I possibly could. I've listen, helped, tried to understand, and explained but that does not work for you because it's not what you want to hear.

Good luck to you sir.

Ok I will thank you again sooo much!

You are very welcome sir......

Fri, Oct 9, 10:41 AM

Good Morning sorry to bother you but can you provide corporate number cause I can't seem to locate it

No bother at all.... :)

678-838-2424 Risk Dept- Chris

  iMessage 

      

10:40

‹ **+1 (903) 257-8857** ›

seem to locate it

No bother at all.... :)

678-838-2424 Risk Dept-
Chris

Oh I talk to the lady in billing

Thank you tho

No she will not know

What were her name?

Already talk to her she said she
is gonna get back with me

Didn't ask

Ok, she don't know but that's
ok.

Ok thank you


Delivered

Did you leave your name and
number?

  

      

CLAIMANT COPY
Texas Workforce Commission
Labor Law Dept. Room 124T
101 East 15th Street
Austin, Tx 78778-0001

# TEXAS WORKFORCE COMMISSION

## PRELIMINARY WAGE DETERMINATION ORDER

Labor Law

February 17, 2021



3204047100000030103

PAGE 1 OF 2 PAGES

MARCUS L WILLIS
348 CASCADE DR
RED OAK TX   75154

Determination Number:      000582252
Wage Claim Number:         21 050180-0
Identification Number:     XXX-XX-XXXX

DIVERSIFIED SOURCING SOLUTIONS OF TEXAS, INC.

An investigation having been completed, the following order is entered pursuant
to Chapter 61 of the Texas Labor Code:

### FINDINGS AND CONCLUSIONS

The claimant is entitled to _____ $215.78 for  unpaid wages _____ .   An
employer  may reduce the employee's salary  but must notify the employee before
initiating the reduction.  Since the claimant was not immediately notified, the
claimant is  entitled to wages  based upon the  prior salary until the date the
employer provided notification.

It has been determined that the employer violated the provisions of the Texas
Payday Law when the claimant's earned wages were not paid in accordance with
the law. If it is determined that an employer has acted in bad faith, the
Commission may assess an administrative penalty for failure to pay wages as
required by law.  In this case no penalty is assessed.

The Claimant was paid for 107.89 Regular hours worked during the
period of 08/24/20-09/11/20 at the rate of $14 per hour instead
of $16 per hour.

Continued on Next Page

**(SEE REVERSE SIDE FOR ADDITIONAL INFORMATION)**

LL-25A (0310)

FORM F0L25A (0310)

CLAIMANT COPY
Texas Workforce Commission
Labor Law Dept. Room 124T
101 East 15th Street
Austin, Tx 78778-0001

# TEXAS WORKFORCE COMMISSION

## PRELIMINARY WAGE DETERMINATION ORDER
Labor Law

February 17, 2021



MARCUS L WILLIS
348 CASCADE DR
RED OAK TX   75154

PAGE  2 OF 2 PAGES

Determination Number:      000582252
Wage Claim Number:         21 050180-0
Identification Number:     XXX-XX-XXXX

ORDER

The employer,
DIVERSIFIED SOURCING SOLUTIONS OF TEXAS, INC.
_____,
is ORDERED to pay _____ $215.78 for  the  use  and  benefit  of  the  claimant,
MARCUS L WILLIS _____,  and shall remit the gross or net
amount disbursement payable to the Texas Workforce Commission.

In addition, being found in  violation of  Chapter 61 of  the  Texas Labor Code,
the  employer is  assessed an administrative penalty in the amount of _____ $0.00
which is to be remitted to the Texas Workforce Commission.

Assigned Representative:   MANOS III

M
LL-25A (0310)

FORM FOL25A (0310)

**U.S. DEPARTMENT OF HEALTH AND HUMAN SERVICES**
# Office for Civil Rights

Southwest Region • 1301 Young Street
Suite 106 • Dallas, TX 75202
Voice - (800) 368-1019 • TDD – (214) 767-8940
Fax - (214) 767-0432 • http://www.hhs.gov/ocr

January 12, 2022

Ms. Frankie Jo Gonzalez
2912 Harwood Rd.
Bedford, TX 76021

Ms. Alicia D. Gerich, Director of Mental Health Services
Child & Family Guidance Center
8915 Harry Hines Blvd.
Dallas, TX 75235

OCR Transaction Number: 22-451613

Dear Ms. Gonzalez and Ms. Gerich:

On November 5, 2021, the U.S. Department of Health and Human Services (HHS), Office for Civil Rights (OCR), received a complaint from Frankie Jo Gonzalez (complainant) obo Marcus Willis (affected party) alleging that Child and Family Guidance Center-Waxahachie (covered entity) is not compliant with Title VI of the Civil Rights Act of 1964 (Title VI).[1]

OCR enforces federal civil rights laws which prohibit discrimination in the delivery of health and human services based on race, color, national origin, disability, age, sex, religion, and the exercise of conscience, and also enforces the Health Insurance Portability and Accountability Act (HIPAA) Privacy, Security and Breach Notification Rules.

In fulfilling our obligation to investigate complaints filed with this office, OCR conducts a thorough and detailed review of all complaints, and requests and obtains additional relevant documentation when necessary. On January 9, 2022, OCR contacted the covered entity pursuant to this complaint and provided technical assistance regarding Title VI. Under Title VI, no person in the United States shall, on the ground of race, color, or national origin be excluded from participation in, be denied the benefits of, or be otherwise subjected to discrimination under any program administered by an entity that

---

[1] Title VI of the Civil Rights Act of 1964, as amended, 42 United States Code (U.S.C.) §§ 2000d, et seq., and its implementing regulation at 45 Code of Federal Regulations (C.F.R.) Part 80.

receives federal financial assistance (FFA).[2]  For example, a recipient of FFA may not, based on race, color, or national origin:

- Deny services or other benefits provided as a part of health or human service programs;
- Provide a different service or other benefit, or provide services or benefits in a different manner from those provided to others under the program;
- Segregate or separately treat individuals in any matter related to the receipt of any service or other benefit;
- Utilize criteria or methods of administration which have the effect of subjecting individuals to discrimination; or
- Select a facility's site or location that excludes individuals or denies them benefits.[3]

Based on the foregoing, OCR is closing this case without further investigation, effective the date of this letter. OCR's determination as stated in this letter applies only to the allegations in this complaint that were reviewed by OCR.

Sincerely,

Marisa M. Smith, Ph.D.
Regional Manager

---

[2] 45 C.F.R. § 80.3(a).
[3] 45 C.F.R. § 80.3(b).



# child family

Marcus Willis
348 Cascade Dr
Red Oak TX 75154

04/21/22

Dear Marcus,

Thank you for choosing Child & Family Guidance Center as your service provider. I have not been able to get in touch with you by phone, so I am reaching out via letter to see if you are still interested in counseling services. If I do not hear from you within two weeks from the date of this letter, I will go ahead and discharge you from my caseload.

Please contact me directly at the number below if you would like to schedule an appointment. Please note this letter does not apply to any psychiatric/medication services that you may or may not take part in. Thank you for your attention to this matter.

Sincerely,

Child and Family Guidance Center
8915 Harry Hines Blvd
Dallas, TX 75235
214-351-3490 Ext

guidance center

Your next appointment is: 10/18/21 at 7pm

With: Rhoda

If you need to cancel or reschedule your appointment,
please call 214.351.3490

child & family

Your next appointment is: 11/18/21 at 12:45

With: Dr. Rashud

If you need to cancel or reschedule your appointment,
please call 214.351.3490

**Shared Progress Notes**
Willis, Marcus
**Patient ID:** WILMA055
**DOB:** 06/30/1978
**Age:** 43 years  **Gender:** M

10/11/2021

---

## Recovery Plan
## Child & Family Guidance Center

**Client Name:** Marcus Willis
**Date of Birth:** 06/30/78
**Date of Uniform Assessment:** 10/11/21

Clinician and client/LAR discussed the services available in Adult LOC-1S: (Skills Training) Basic Services  and mutually agreed to create a Recovery Plan which incorporates the services appropriate to help achieve their goals identified below. Client will work toward achieving these goal(s) through linkage to resources utilizing the assistance of agency providers.

Description of the presenting problem: «*» depression, anxiety, cultural issues, job
Any co-occurring substance use or physical health disorder? «Yes» no If any, please explain: «*» Referred to: «*»
Client preferences, if any(i.e. Spanish speaking clinician, female therapist, etc): «*» None

Natural Support(s):
Is client interested in allowing natural support(s) to assist in the recovery process? yes «no»
If yes, please identify client's natural support(s): «*» family. maybe.
List any educational or supportive services identified for client's natural support(s) *(such as parent training  educational materials, community referrals)*: «*» None

History of Military Service: no «Yes»  History of Combat? no «Yes» If Yes, explain:

### STRENGTHS
*As identified by CANS/ANSA. Check all that apply and develop strength based strategies for items with a score of 0 or 1, or strength building activities based on scores of 2 or 3.*
Family «Volunteering» Natural Supports «Social Connectedness» «Job History» «Resiliency» «Optimism»
«Spiritual/Religious» «Resourcefulness» «Talents/Interests» «Community Connectedness» «Educational»

### NEEDS, RISK BEHAVIORS, or LIFE DOMAIN FUNCTIONING
*As identified by CANS/ANSA. Check all that apply and develop goals based on items with scores of 2 or 3.*
«Cognition» Depressive Sx anxiety «Language» «Suicide Risk» «Exploitation» «Physical/Medical» «Recreational»
«Legal» «Decision Making» «Impulse Control» «Interpersonal Problems» «Antisocial Behavior» «Identity» «Self-M... Cus
Behavior» «Sexual Aggression» «Family Functioning» «Intellectual Development» «Residential Stability» «Involvement in
Recovery» «Mania» Anger Control «Substance Use» «Ritual» «Danger to Others» «Gambling» Employment «Sexuality»
«Sleep» «Transportation» «Psychosis/Thought Disturbance» «Adjustment to Trauma» «Eating Disturbance» Cultural
Stress «Other Self-Harm» «Criminal Behavior» «Social Functioning» «Living Skills» «Self-care»

**Shared Progress Notes**
Willis, Marcus
**Patient ID:** WILMA055
**DOB:** 06/30/1978
Age: 43 years  Gender: M

10/11/2021

---

### Recovery Goal 1

**Recovery Goal 1**: In the client's words, identify the need, risk behavior, or area of functioning being addressed during this treatment period? «*»

**Objectives:** What are you, as the client/LAR going to do to work toward achieving your/your child's goal (use SMART)?
1. «*» Make/keep appt with prescriber as documented.  Take meds as prescribed.
2. «*» Talk with prescriber 1x monthly about effectiveness as documented. more often if problems occur
3. «*» Talk with caseworker 1x monthly to discuss add'l services and supports as documented

**Interventions/Strategies:** What are you, as the clinician/prescriber, going to do to help client work toward goal (use SMART)?
1. «*»
**What** curriculum or treatment will be used to accomplish this goal? RCM - No Manual Utilized

Core and Adjunct Services from designated LOC to be utilized in working toward goal achievement are: Adult
**LOC-1S: Basic Services (Skills Training)**
Core Services:
Pharmacological Management Routine Case Management
Adjunct Services:
Psychiatric Diagnostic Interview Examination Medication Training & Support  «Engagement Activity» Skills
Training & Development  «Supported Employment» «Supported Housing»

**Start Date:** «*» 10/11/2021
**Target Date for Completion:** «*» 04/09/2022
**Frequency of visits:** «*»1-2x «*»monthly
**Progress toward recovery goal during the previous treatment period:** No Previous Treatment
**Please explain (excluding 'No previous treatment'):** «*»

The above Recovery Plan was created in collaboration with the client, Legally Authorized Representative (if applicable)
clinical team and any other support(s) identified byt the client/LAR. A copy of the plan was offered to the client/LAR.

_____          _____
Client/LAR Signature                                      Date


_____          _____
Clinician's Signature (w/Credentials)                Date

# 3 - 22CV1251 - E



## UNITED STATES DISTRICT COURT

## FOR THE NORTHERN DISTRICT OF TEXAS

### SUMMONS

PLEASE TAKE NOTICE THAT YOU ARE HEREBY SUMMONED to answer the complaint of the Plaintiff herein and to serve a copy of your answer on the Plaintiff at the address indicated below within ___21___ days after service is complete. Should you fail to answer, a judgment will be entered against you by default for the relief demanded in the complaint.

Dated: June 7, 2022

**PLAINTIFF:**  Marcus Willis
348 Cascade Dr., Red Oak, TX 75154.

**DEFENDANT:**  Western Power Sports,
HQ: 601 E. Gowen Road, Boise, ID 83716
**UNITED STATES DISTRICT COURT**

**FOR THE NORTHERN DISTRICT OF TEXAS**

COMPLAINT

1

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS
Willis, Marcus, L.

**DEFENDANTS**
Western Power Sports, Inc.

**(b)** County of Residence of First Listed Plaintiff   Ellis
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant   Ada
*(IN U.S. PLAINTIFF CASES ONLY)*
NOTE:   IN LAND CONDEMNATION CASES, USE THE LOCATION OF
THE TRACT OF LAND INVOLVED.

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*
ORIGINAL

Attorneys *(If Known)*

RECEIVED

JUN - 9 2022

MS

CLERK U.S. DISTRICT COURT

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

| | | |
|---|---|---|
| ☑ 1 | U.S. Government Plaintiff | ☐ 3 Federal Question *(U.S. Government Not a Party)* |
| ☑ 2 | U.S. Government Defendant | ☑ 4 Diversity *(Indicate Citizenship of Parties in Item III)* |

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff*
*(For Diversity Cases Only)*    *and One Box for Defendant)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☑ 1 | ☐ 1 | Incorporated *or* Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated *and* Principal Place of Business In Another State | ☐ 5 | ☑ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*
Click here for: Nature of Suit Code Descriptions.

| CONTRACT | TORTS | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY**   **PERSONAL INJURY** | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 422 Appeal 28 USC 158 | ☐ 375 False Claims Act |
| ☐ 120 Marine | ☐ 310 Airplane    ☐ 365 Personal Injury - | ☐ 690 Other | ☐ 423 Withdrawal | ☐ 376 Qui Tam (31 USC |
| ☐ 130 Miller Act | ☐ 315 Airplane Product    Product Liability | |    28 USC 157 |    3729(a)) |
| ☐ 140 Negotiable Instrument |    Liability    ☐ 367 Health Care/ | | **INTELLECTUAL** | ☐ 400 State Reapportionment |
| ☐ 150 Recovery of Overpayment | ☐ 320 Assault, Libel &    Pharmaceutical | | **PROPERTY RIGHTS** | ☐ 410 Antitrust |
|    & Enforcement of Judgment |    Slander    Personal Injury | | ☐ 820 Copyrights | ☐ 430 Banks and Banking |
| ☐ 151 Medicare Act | ☐ 330 Federal Employers'    Product Liability | | ☐ 830 Patent | ☐ 450 Commerce |
| ☐ 152 Recovery of Defaulted |    Liability    ☐ 368 Asbestos Personal | | ☐ 835 Patent - Abbreviated | ☐ 460 Deportation |
|    Student Loans | ☐ 340 Marine    Injury Product | |    New Drug Application | ☐ 470 Racketeer Influenced and |
|    (Excludes Veterans) | ☐ 345 Marine Product    Liability | | ☐ 840 Trademark |    Corrupt Organizations |
| ☐ 153 Recovery of Overpayment |    Liability    **PERSONAL PROPERTY** | | ☐ 880 Defend Trade Secrets | ☐ 480 Consumer Credit |
|    of Veteran's Benefits | ☐ 350 Motor Vehicle    ☐ 370 Other Fraud | **LABOR** |    Act of 2016 |    (15 USC 1681 or 1692) |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle    ☐ 371 Truth in Lending | ☐ 710 Fair Labor Standards | | ☐ 485 Telephone Consumer |
| ☐ 190 Other Contract |    Product Liability    ☐ 380 Other Personal |    Act | **SOCIAL SECURITY** |    Protection Act |
| ☐ 195 Contract Product Liability | ☐ 360 Other Personal    Property Damage | ☐ 720 Labor/Management | ☐ 861 HIA (1395ff) | ☐ 490 Cable/Sat TV |
| ☐ 196 Franchise |    Injury    ☐ 385 Property Damage |    Relations | ☐ 862 Black Lung (923) | ☐ 850 Securities/Commodities/ |
| | ☐ 362 Personal Injury -    Product Liability | ☐ 740 Railway Labor Act | ☐ 863 DIWC/DIWW (405(g)) |    Exchange |
| |    Medical Malpractice | ☐ 751 Family and Medical | ☐ 864 SSID Title XVI | ☐ 890 Other Statutory Actions |
| **REAL PROPERTY** | **CIVIL RIGHTS**    **PRISONER PETITIONS** |    Leave Act | ☐ 865 RSI (405(g)) | ☐ 891 Agricultural Acts |
| ☐ 210 Land Condemnation | ☐ 440 Other Civil Rights    **Habeas Corpus:** | ☐ 790 Other Labor Litigation | | ☐ 893 Environmental Matters |
| ☐ 220 Foreclosure | ☐ 441 Voting    ☐ 463 Alien Detainee | ☐ 791 Employee Retirement | **FEDERAL TAX SUITS** | ☐ 895 Freedom of Information |
| ☐ 230 Rent Lease & Ejectment | ☑ 442 Employment    ☐ 510 Motions to Vacate |    Income Security Act | ☐ 870 Taxes (U.S. Plaintiff |    Act |
| ☐ 240 Torts to Land | ☐ 443 Housing/    Sentence | |    or Defendant) | ☐ 896 Arbitration |
| ☐ 245 Tort Product Liability |    Accommodations    ☐ 530 General | | ☐ 871 IRS—Third Party | ☐ 899 Administrative Procedure |
| ☐ 290 All Other Real Property | ☐ 445 Amer. w/Disabilities -    ☐ 535 Death Penalty | **IMMIGRATION** |    26 USC 7609 |    Act/Review or Appeal of |
| |    Employment    **Other:** | ☐ 462 Naturalization Application | |    Agency Decision |
| | ☐ 446 Amer. w/Disabilities -    ☐ 540 Mandamus & Other | ☐ 465 Other Immigration | | ☐ 950 Constitutionality of |
| |    Other    ☐ 550 Civil Rights |    Actions | |    State Statutes |
| | ☐ 448 Education    ☐ 555 Prison Condition | | | |
| |    ☐ 560 Civil Detainee - | | | |
| |    Conditions of | | | |
| |    Confinement | | | |

## V. ORIGIN *(Place an "X" in One Box Only)*

| | | | | | |
|---|---|---|---|---|---|
| ☑ 1 Original Proceeding | ☐ 2 Removed from State Court | ☐ 3 Remanded from Appellate Court | ☐ 4 Reinstated or Reopened | ☐ 5 Transferred from Another District *(specify)* | ☐ 6 Multidistrict Litigation - Transfer | ☐ 8 Multidistrict Litigation - Direct File |

## VI. CAUSE OF ACTION
Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
42 U.S.C 1981
Brief description of cause:
Racial discrimination and retaliaton in the work place.

## VII. REQUESTED IN COMPLAINT:
☐ CHECK IF THIS IS A CLASS ACTION UNDER RULE 23, F.R.Cv.P.
**DEMAND $**
$500,000,000.00
CHECK YES only if demanded in complaint:
**JURY DEMAND:**   ☑ Yes   ☐ No

## VIII. RELATED CASE(S) IF ANY
*(See instructions):*
JUDGE _____    DOCKET NUMBER _____

DATE _____    SIGNATURE OF ATTORNEY OF RECORD _____

**FOR OFFICE USE ONLY**

RECEIPT # _____    AMOUNT _____    APPLYING IFP _____    JUDGE _____    MAG. JUDGE _____