IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| MARCUS L. WILLIS, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| V. | § | No. 3:22-cv-1251-E-BN |
| | § | |
| WESTERN POWER SPORTS, INC., | § | |
| | § | |
| Defendant. | § | |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION OF THE
UNITED STATES MAGISTRATE JUDGE**

Plaintiff Marcus L. Willis filed a *pro se* complaint against Defendant Western

Power Sports, Inc. (Western) under 42 U.S.C. § 1981 and Title VII of the Civil Rights

Act of 1964, alleging that he was unlawfully terminated and asserting claims of racial

discrimination, retaliation, a hostile work environment, defamation, and "whistle

blowing." Dkt. No. 3.

United States District Judge Ada Brown referred Willis's lawsuit to the

undersigned United States magistrate judge for pretrial management under 28

U.S.C. § 636(b) and a standing order of reference.

Because Willis paid the filing fee, he assumed the responsibility to properly

serve the named defendant with a summons and a complaint in compliance with

Federal Rule of Civil Procedure 4 or obtain a waiver of service, an obligation that

Willis received notice of in August 2022. *See* Dkt. No. 5. Since then, the undersigned

has twice recommended that the Court dismiss this lawsuit without prejudice under

Federal Rule of Civil Procedure 4(m), recommendations that were withdrawn to allow

Willis further opportunities to properly serve the named defendant or obtain a waiver of service or to address motions to dismiss this lawsuit. *See* Dkt. Nos. 7, 9, 13, 19.

Western moves to dismiss this lawsuit, challenging the sufficiency of the service of the summons and complaint and arguing that Willis fails to state a claim on which relief may be granted. *See* Dkt. Nos. 14, 18. Willis responded to the motions to dismiss. *See* Dkt. No. 23. And Western replied. *See* Dkt. No. 24.

Willis has also filed various motions – including for default judgment and summary judgment, which the parties have briefed. *See* Dkt. Nos. 11, 15, 25-32.

And the undersigned enters these findings of fact, conclusions of law, and recommendation that the Court should grant Western's motions to dismiss, vacate the Clerk's entry of default, deny Willis's motions, including for default and summary judgment, and dismiss this lawsuit with prejudice unless, within the time to file objections to these recommendations, Willis satisfactorily shows that he can amend his complaint to allege a plausible claim.

## Legal Standards: Rule 12(b)(6)

In deciding a motion to dismiss for failure to state a claim upon which relief may be granted under Rule 12(b)(6), the Court "accepts all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff." *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205-06 (5th Cir. 2007).

Such a motion is therefore "not meant to resolve disputed facts or test the merits of a lawsuit" and "instead must show that, even in the plaintiff's best-case scenario, the complaint does not state a plausible case for relief." *Sewell v. Monroe*

*City Sch. Bd.*, 974 F.3d 577, 581 (5th Cir. 2020).

Even so, a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face," *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007), and must plead those facts with enough specificity "to raise a right to relief above the speculative level," *id.* at 555.

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* And "[a] claim for relief is implausible on its face when 'the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct.'" *Harold H. Huggins Realty, Inc. v. FNC, Inc.*, 634 F.3d 787, 796 (5th Cir. 2011) (quoting *Iqbal*, 556 U.S. at 679); *see also Inclusive Communities Project, Inc. v. Lincoln Prop. Co.*, 920 F.3d 890, 899 (5th Cir. 2019) ("Where the well-pleaded facts of a complaint do not permit a court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – 'that the pleader is entitled to relief.'" (quoting *Iqbal*, 556 U.S. at 678 (quoting, in turn, FED. R. CIV. P. 8(a)(2)))).

Federal Rule of Civil Procedure 8(a)(2) does not mandate detailed factual allegations, but it does require that a plaintiff allege more than labels and conclusions. And, while a court must accept a plaintiff's factual allegations as true, it is "not bound to accept as true a legal conclusion couched as a factual allegation."

*Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555). Consequently, a threadbare or formulaic recitation of the elements of a cause of action, supported by mere conclusory statements, will not suffice. *See id.*; *see also Armstrong v. Ashley*, 60 F.4th 262, 269 (5th Cir. 2023) ("[T]he court does not 'presume true a number of categories of statements, including legal conclusions; mere labels; threadbare recitals of the elements of a cause of action; conclusory statements; and naked assertions devoid of further factual enhancement.'" (quoting *Harmon v. City of Arlington, Tex.*, 16 F.4th 1159, 1162-63 (5th Cir. 2021))).

So, "to survive a motion to dismiss" under *Twombly* and *Iqbal*, plaintiffs must "plead facts sufficient to show" that the claims asserted have "substantive plausibility" by stating "simply, concisely, and directly events" that they contend entitle them to relief. *Johnson v. City of Shelby, Miss.*, 574 U.S. 10, 12 (2014) (per curiam) (citing Fed. R. Civ. P. 8(a)(2)-(3), (d)(1), (e)); *see also Inclusive Communities*, 920 F.2d at 899 ("'Determining whether a complaint states a plausible claim for relief' is 'a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.'" (quoting *Iqbal*, 556 U.S. at 679; citation omitted)).

"*Pro se* complaints receive a 'liberal construction.' Even so, 'mere conclusory allegations on a critical issue are insufficient.'" *Brown v. Tarrant Cnty., Tex.*, 985 F.3d 489, 494 (5th Cir. 2021) (quoting *Carlucci v. Chapa*, 884 F.3d 534, 538 (5th Cir. 2018), then *United States v. Woods*, 870 F.2d 285, 288 n.3 (5th Cir. 1989) (per curiam)). And "liberal construction does not require that the Court ... create causes of action where there are none." *Smith v. CVS Caremark Corp.*, No. 3:12-cv-2465-B, 2013 WL

2291886, at \*8 (N.D. Tex. May 23, 2013). "To demand otherwise would require the 'courts to explore exhaustively all potential claims of a *pro se* plaintiff'" and would "'transform the district court from its legitimate advisory role to the improper role of an advocate seeking out the strongest arguments and most successful strategies for a party.'" *Jones v. Mangrum*, No. 3:16-cv-3137, 2017 WL 712755, at \*1 (M.D. Tenn. Feb. 23, 2017) (quoting *Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir. 1985)).

Aside from "matters of which judicial notice may be taken under Federal Rule of Evidence 201," *Inclusive Communities Project*, 920 F.2d at 900 (citations omitted), a court cannot look beyond the pleadings in deciding a Rule 12(b)(6) motion, *see Spivey v. Robertson*, 197 F.3d 772, 774 (5th Cir. 1999); *see also Basic Capital Mgmt., Inc. v. Dynex Capital, Inc.*, 976 F.3d 585, 589 (5th Cir. 2020) (Federal Rule of Evidence 201(d) "expressly provides that a court 'may take judicial notice at *any* stage of the proceeding,' and our precedents confirm judicially noticed facts may be considered in ruling on a 12(b)(6) motion." (citations omitted)).

Pleadings in the Rule 12(b)(6) context include attachments to the complaint. *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007); *see also Gill as Next Friend of K.C.R. v. Judd*, 941 F.3d 504, 511 (11th Cir. 2019) ("The Civil Rules provide that an attachment to a complaint generally becomes 'part of the pleading for all purposes,' including for ruling on a motion to dismiss." (quoting FED. R. CIV. P. 10(c); citations omitted)). And, "[w]hen 'an allegation is contradicted by the contents of an exhibit attached to the pleading, then indeed the exhibit and not the allegation

controls.'" *Rogers v. City of Yoakrum*, 660 F. App'x 279, 285 n.6 (5th Cir. 2016) (per curiam) (quoting *United States ex rel. Riley v. St. Luke's Episcopal Hosp.*, 355 F.3d 370, 377 (5th Cir. 2004) (citing, in turn, *Simmons v. Peavy-Welsh Lumber Co.*, 113 F.2d 812, 813 (5th Cir. 1940))).

Documents "attache[d] to a motion to dismiss are considered to be part of the pleadings, if they are referred to in the plaintiff's complaint and are central to her claim." *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498-99 (5th Cir. 2000) (quoting *Venture Assocs. Corp. v. Zenith Data Sys. Corp.*, 987 F.2d 429, 431 (7th Cir. 1993)). And, while the United States Court of Appeals for the Fifth Circuit "has not articulated a test for determining when a document is central to a plaintiff's claims, the case law suggests that documents are central when they are necessary to establish an element of one of the plaintiff's claims. Thus, when a plaintiff's claim is based on the terms of a contract, the documents constituting the contract are central to the plaintiff's claim." *Kaye v. Lone Star Fund V (U.S.), L.P.*, 453 B.R. 645, 662 (N.D. Tex. 2011). But, "if a document referenced in the plaintiff's complaint is merely evidence of an element of the plaintiff's claim, then the court may not incorporate it into the complaint." *Id.*

And a plaintiff may not amend his allegations through a response to a motion to dismiss. "[A] claim for relief" must be made through a pleading, FED. R. CIV. P. 8(a), and a response to a motion is not among the "pleadings [that] are allowed" under the Federal Rules of Civil Procedure, FED. R. CIV. P. 7(a); *see, e.g., Klaizner v. Countrywide Fin.*, No. 2:14-CV-1543 JCM (PAL), 2015 WL 627927, at *10 (D. Nev.

Feb. 12, 2015) ("All claims for relief must be contained in a pleading. A response to a motion is not a pleading and it is improper for the court to consider causes of action not contained in the pleadings." (citations omitted)).

## Discussion

Western first argues that Willis fails to plausibly allege that it was his employer.

"Title VII prohibits 'employers' from adversely affecting a person's status as an employee based on race." *Woolridge v. Fischbach & Moore*, 234 F.3d 706 (table), 2000 WL 1598022, at *2 (5th Cir. Sept. 28, 2000) (citing 42 U.S.C. § 2000e-2(a)). So "[a] threshold requirement for liability to attach to an entity under title VII is status as an employer." *Id.*

> To determine whether an entity exercises enough control over an individual to qualify as his employer, [courts in this circuit] apply a "hybrid economic realities/common law control test." The right to control the employee's conduct is the most important component of determining a joint employer. When examining the control component, [courts] focus on the right to hire and fire, the right to supervise, and the right to set the employee's work schedule. The economic-realities component of the "hybrid economic realities/common law control test" focuses on who paid the employee's salary, withheld taxes, provided benefits, and set the terms and conditions of employment.

*Perry v. VHS San Antonio Partners, L.L.C.*, 990 F.3d 918, 928-29 (5th Cir. 2021) (citations omitted); *see also, e.g.*, *Magee v. Carpenter Health Network, LLC*, Civ. A. No. 17-10491, 2018 WL 521047, at *3 (E.D. La. Jan. 23, 2018) (this test applies equally to claims under Section 1981).

If raised, courts typically tackle this issue at summary judgment, but that does not mean that a plaintiff need not plausibly allege an employer-employee relationship

in the complaint. *See, e.g.*, *Baker v. Aetna Life Ins. Co.*, 228 F. Supp. 3d 764, 770 (N.D. Tex. 2017) (noting that, "[i]n the Fifth Circuit, to recover under Title VII, a plaintiff must have an employment relationship with the defendant" and that "[e]mployer status can be established under the 'single employer' test or the 'hybrid economic realities/common law control' test" and concluding that, "where the plaintiff failed to allege facts to "satisfy either the single employer test or the hybrid economic realities/common law control test," she failed to state "a claim upon which relief can be granted against [the defendant], because she has not plausibly pleaded that [the defendant] was her employer" (citations omitted)); *Magee*, 2018 WL 521047, at *3 (similar).

Willis does allege that he was hired by a staffing agency, Diversified Sourcing Solutions (DSS) and that he was told by agency's recruiting manager (Paola) that, "once [he] reached his 700 hours the company would hire [him] at [Western's] center in Texas." Dkt. No. 3 at 2.

And Western argues:

> Plaintiff attached documents, such as timesheets and payroll records, to his Complaint which demonstrate he was paid by DSS and he turned in timesheets to DSS. [Dkt. 3, pp. 19, 28, 38]. Plaintiff's attachments also indicate DSS controlled his start time, his pay, and his attendance because it was to DSS that he reported any issues on these matters (e.g., when he was late, he texted DSS, not WPS). [Dkt. 3, pp. 29- 34].
> Most importantly, when Plaintiff was terminated Joyner and Pless informed DSS of the termination, not WPS, because DSS was Plaintiff's employer.
> Willis's Complaint alleges no facts that would allow the Court to draw a reasonable inference that WPS had a right to control him or his work. Nor does Plaintiff allege facts which demonstrate WPS hired or fired employees, controlled the conditions of his employment,

determined the rate and method of his payment, or maintained his employment records.

Dkt. No. 18 at 4-5 (footnote omitted).

The undersigned cannot agree that Willis "alleges no facts that would allow the Court to draw a reasonable inference" that Western could be considered his employer.

First, as to Western's argument that its employees "informed DSS of [Willis's] termination, not [Western], because DSS was [Willis's] employer," this assertion is supported by a declaration from an employee of the company that acquired Western, attached to its motion to dismiss, an affidavit that the Court cannot consider as part of the pleadings under the exception in *Collins* set out above. *See, e.g.*, *Griffith v. Cinepolis USA, Inc.*, No. 3:20-cv-3455-G-BN, 2021 WL 3059412, at *6 (N.D. Tex. June 28, 2021) ("As the EEOC charge and right-to-sue letter attached to Brinker's motion to dismiss are neither mentioned in Griffith's complaint nor central to – that is, necessary to establish an essential element of – a claim that he has made but are instead necessary to establish Brinker's affirmative defenses of limitations and failure to exhaust, the Court may not consider the exhibits to Brinker's motion under Rule 12(b)(6)."), *rec. accepted*, 2021 WL 3054865 (N.D. Tex. July 20, 2021).

And the allegations of the complaint (including the documents Willis attaches to it) reflect that Western exercised a level of control over Willis that allows the Court to infer an employment relationship sufficient to survive a motion to dismiss. *See, e.g.*, Dkt. No. 3 at 3 (Western's manager "Scott went further to warn [Willis] that in the event [he mislabeled a part] again, his employment would be terminated. He then

told Willis to go home."); *id.* at 4 ("Scott then informed [Willis] that his pay would be decreased. [Willis's] pay was $16 and was reduced to $14 after Scott made this statement."); *id.* ("Paola informed [Willis] that Scott had terminated his employment on the grounds of his failure to follow instructions.").

A decision of a panel of the Fifth Circuit at summary judgment similarly concerning a temporary employee provided by a staffing agency is helpful:

> Freescale argues it is not Burton's employer because it did "not have authority to hire, fire, supervise or directly administer disciplinary procedures" to her. The evidence undermines this assertion. Freescale had the right to demand Burton's termination from the assignment. Freescale supervised Burton. Complaints against her were made by Freescale personnel, while her nominal Manpower supervisor, Arthur Flores, worked primarily at a different Freescale location and never observed her while she worked. Freescale employees completed performance reviews of Burton's work. On-the-job corrections and admonishment were delivered by Freescale employees. Most fundamentally, it was Freescale that decided and insisted that Burton be fired. Burton has offered adequate evidence of an employment relationship.
>
> With respect to the economic realities inquiry, Freescale asserts that it "does not handle payroll, withhold taxes, provided [sic] benefits, workers compensation insurance, or set the terms and conditions of employment for Manpower temps." These considerations favor Freescale, but on balance and cognizant of our mandate to "emphasize" the common law control test, we find they do not change the outcome. *See Juino v. Livingston Parish Fire Dist. No. 5*, 717 F.3d 431, 434 (5th Cir. 2013). The competing tests are in equipoise, and our emphasis on the common law control test is dispositive.

*Burton v. Freescale Semiconductor, Inc.*, 798 F.3d 222, 227-28 (5th Cir. 2015); *see also*

*E.E.O.C. v. S&B Indus., Inc.*, No. 3:15-cv-641-D, 2016 WL 7178969, at *6 (N.D. Tex.

Dec. 8, 2016) ("*Burton* instructs that the *right to control* an employee's conduct is the

most important component of the hybrid economic realities/common law control test

and the component that the court must 'emphasize.' Although there is certainly

- 10 -

evidence in the summary judgment record that could persuade a reasonable jury to find that only Staff Force had the right to control Rice's and Baker's conduct, taking the EEOC's evidence as true and drawing all reasonable inferences in its favor, the court holds that a reasonable jury could also find that S&B had the right to control their conduct." (citation omitted)).

But, even if Willis has plausibly alleged an employment relationship, he still fails to allege a plausible cause of action against Western.

Preliminarily, Willis purports to bring his federal claims under both Title VII and Section 1981, *see* Dkt. No. 3 at 1, a statute that "guarantees to '[a]ll persons within the jurisdiction of the United States ... the same right ... to make and enforce contracts ... as is enjoyed by white citizens,'" *Johnson v. PRIDE Indus., Inc.*, 7 F.4th 392, 399 (5th Cir. 2021) (quoting 42 U.S.C. § 1981(a)).

Traditionally, courts have analyzed wrongful employment claims brought under both statutes in combination, observing, for example, that "Section 1981 claims are governed by the same standards as Title VII, except that Section 1981 does not require exhaustion of administrative remedies." *O'Neal v. Cargill, Inc.*, 178 F. Supp. 3d 408, 420 (E.D. La. 2016) (citing *Chen v. Ochsner Clinic Found.*, 630 F. App'x 218, 227 (5th Cir. 2015) (per curiam)); *see also Shackelford v. Deloitte & Touche, LLP*, 190 F.3d 398, 404 n.2 (5th Cir. 1999) ("When used as parallel causes of action, Title VII and section 1981 require the same proof to establish liability." (citation omitted)).

But, following a 2020 United States Supreme Court decision, courts have emphasized that, although the two statutes are somewhat similar, Section 1981

imposes a more stringent causation requirement. That is, "[w]hile [Section 1981's] text does not expressly discuss causation, it is suggestive," such that, "[t]o prevail, a plaintiff must initially plead and ultimately prove that, but for race, it would not have suffered the loss of a legally protected right." *Comcast Corp. v. Nat'l Ass'n of Afr. Am.-Owned Media*, 140 S. Ct. 1009, 1015, 1020 (2020); *see Williams v. Waste Mgmt., Inc.*, 818 F. App'x 315, 325 (5th Cir. 2020) (per curiam) ("Although similar in some respects to Title VII, 42 U.S.C. § 1981 requires plaintiff's showing but-for causation." (citing *Comcast*, 140 S. Ct. at 1014)).

For purposes of Western's Rule 12(b)(6) motion to dismiss, the undersigned will consider Willis's claims under the less stringent standards of Title VII. And, as explained below, because Willis fails to allege plausible Title VII claims, he has not pled but-for causation under Section 1981.

## I.    Willis fails to allege a plausible claim of racial discrimination.

To plausibly allege (and ultimately prove) a claim of racial discrimination under Title VII requires that Willis either rely on direct evidence of discrimination or, in the alternative, proceed under a burden-shifting analysis.

"'[D]irect evidence is rare'" and has been defined by the Fifth Circuit "as 'evidence which, if believed, proves the fact without inference or presumption.'" *Clark v. Champion Nat'l Sec., Inc.*, 952 F.3d 570, 579 (5th Cir. 2020) (footnotes omitted). For example, "'[a] statement or document which shows "on its face that an improper criterion served as a basis – not necessarily the sole basis, but a basis – for the adverse employment action [is] direct evidence of discrimination."'" *Clark*, 952 F.3d at 579 (footnote omitted).

Because Willis's allegations do not implicate direct evidence of discrimination, he must proceed under the applicable burden-shifting analysis and first articulate a prima facie case as to racial discrimination, the elements of which are that Willis

> (1) is a member of a protected group; (2) was qualified for the position at issue; (3) was discharged or suffered some adverse employment action by the employer; and (4) was replaced by someone outside his protected group or was treated less favorably than other similarly situated employees outside the protected group.

*McCoy v. City of Shreveport*, 492 F.3d 551, 556 (5th Cir. 2007) (citation omitted).

Willis need not establish a prima facie case at the pleading stage. *See Cicalese v. Univ. of Tex. Med. Branch*, 924 F.3d 762, 766 (5th Cir. 2019); *Raj v. La. State Univ.*, 714 F.3d 322, 331 (5th Cir. 2013).

But he must "plead sufficient facts on all of the ultimate elements of his claim to make his case plausible." *Chhim v. Univ. of Tex. at Austin*, 836 F.3d 467, 470 (5th Cir. 2016) (citations omitted); *see also Meadows v. City of Crowley*, 731 F. App'x 317, 318 (5th Cir. 2018) (per curiam) (*Raj* "does not exempt a plaintiff from alleging facts sufficient to establish the elements of her claims." (citations omitted)); *Body by Cook, Inc. v. State Farm Mut. Auto. Ins.*, 869 F.3d 381, 387 n.1 (5th Cir. 2017) ("Although not a pleading standard, this court has looked to the 'evidentiary framework' set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), to determine whether a plaintiff pleads discriminatory intent." (cleaned up)).

And Willis "must plausibly set out facts that [Western] 'took the adverse employment action against [him] *because of* [a] protected status.'" *Sanchez v. Chevron N. Am. Exploration & Prod. Co.*, No. 20-30783, 2021 WL 5513509, at *5 (5th Cir. Nov. 24, 2021) (per curiam) (quoting *Raj*, 714 F.3d at 331; emphasis by *Raj*).

In sum, at this stage, the Court must ask whether Willis has alleged enough facts, accepted as true, to allege an actionable claim of racial discrimination in violation of Title VII. *See Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 512-13 (2002). And, if he "has not pled such facts," it is "proper[ to] dismiss" this claim. *Meadows*, 731 F. App'x at 318; *see also Cicalese*, 924 F.3d at 766-67 (noting that the district court's "task is to identify the ultimate elements of [the applicable employment-related] claim and then determine whether the" plaintiff has pled those elements but that a "district court err[s if it] require[es a plaintiff] to plead something beyond those elements to survive a motion to dismiss").

Western does not contest that Willis has alleged both that he is a member of a protected group and that he suffered an adverse employment action.

But, even if the Court can infer from Willis's allegations that he was qualified for his position, as he was employed in the position from which he was terminated, *see, e.g.*, *Berquist v. Wash. Mut. Bank*, 500 F.3d 344, 350-51 (5th Cir. 2007), Willis provides no facts to support the fourth essential element – that he was at least treated less favorably than other similarly situated employees outside the protected group.

For example, Willis alleges that "African Americans were denied the same privileges as non-African Americans. Notably, African Americans were prevented from talking at the work place yet there was no issue when non-African Americans talked." Dkt. No. 3 at 3. If these allegations are more than conclusory, they still fail to plausibly plead the fourth element by providing facts to show that a non-African American employee is a comparator, someone "under nearly identical circumstances."

*Lee v. Kan. City So. Ry. Co.*, 574 F.3d 253, 260 (5th Cir. 2009) (quoting *Little v. Republic Ref. Co., Ltd.*, 924 F.2d 93, 97 (5th Cir. 1991)). "[C]ritically, the plaintiff's conduct that drew the adverse employment decision must have been 'nearly identical' to that of the proffered comparator who allegedly drew dissimilar employment decisions. If the 'difference between the plaintiff's conduct and that of those alleged to be similarly situated *accounts for* the difference in treatment received from the employer,' the employees are not similarly situated for the purposes of an employment discrimination analysis." *Id.* (footnotes omitted).

## II. Willis fails to allege a plausible hostile work environment claim.

"Hostile work environment is a specific discrimination claim under Title VII." *Hudson v. Lincare, Inc.*, 58 F.4th 222, 229 (5th Cir. 2023) (citing *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 18-19 (1993)). "When a 'workplace is permeated with "discriminatory intimidation, ridicule, and insult," that is "sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment," Title VII is violated.'" *Id.* (quoting *Harris*, 510 U.S. at 21 (quoting, in turn, *Meritor Sav. Bank, FSB v. Vinson*, 477 U.S. 57, 65, 67 (1986))).

A required prima facie element of a claim of hostile work environment is that "the harassment complained of affected a term, condition, or privilege of employment." *Johnson*, 7 F.4th at 399-400 (citing *Ramsey v. Henderson*, 286 F.3d 264, 268 (5th Cir. 2002)). "To affect a term, condition, or privilege of employment, the harassing conduct 'must be sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment.'" *E.E.O.C. v. Boh Bros. Constr. Co., 731 F.3d 444, 453 (5th Cir. 2013) (en banc)* (cleaned up; quoting

*Aryain v. Wal-Mart Stores of Tex., L.P.*, 534 F.3d 473, 479 (5th Cir. 2008)).

Courts in this circuit apply "an objective 'reasonable person' standard to evaluate severity and pervasiveness." *Id.* (citing *Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 82 (1998)).

This inquiry "requires that the court consider 'all the circumstances,' including 'the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance.'" *Johnson*, 7 F.4th at 400 (quoting *Harris*, 510 U.S. at 23). But "no single factor is required." *Harris*, 510 U.S. at 23.

Willis's non-conclusory allegations, including that his supervisor raised his voice, that the supervisor's ridicule left Willis embarrassed, and that another African American employee was ridiculed for being unable to push the pallet jack, fall far short of these standards. And none of Willis's allegations alone or in combination are sufficiently severe or pervasive to alter the conditions of Willis's employment.

### III.    Willis fails to allege a plausible retaliation claim

"In the retaliation context, a *prima facie* case requires a showing that (1) [the plaintiff] engaged in a protected activity pursuant to one of the statutes, (2) an adverse employment action occurred, and (3) there exists a causal link connecting the protected activity to the adverse employment action." *Munoz v. Seton Healthcare, Inc.*, 557 F. App'x 314, 321 (5th Cir. 2014) (citation omitted).

Willis alleges that, on August 20, 2020, he "explained" to Western's corporate office "how Scott was discriminatory towards blacks and favored Spanish employees."

Dkt. No. 3 at 5. Internal complaints of discrimination are protected activities under Title VII. But Willis engaged in this protected activity only after he was terminated. So he has not alleged the required causal link.

### IV. Willis fails to allege plausible claims under Texas law.

Willis further alleges violations of state law: that he was defamed, wrongfully terminated, and terminated after being a whistleblower. But he fails to allege plausible claims under any of these theories.

To maintain a valid claim of defamation under Texas law, a plaintiff must demonstrate that the defendant: (1) published a statement; (2) containing assertions of fact that are defamatory, injuring the plaintiff's reputation; (3) while acting with either actual malice, if plaintiff is considered a public official or public figure, or negligence, if plaintiff is a private individual, regarding the truth of the statement. *See WFAA-TV, Inc. v. McLemore*, 978 S.W.2d 568, 571 (Tex. 1998); *N.Y. Times v. Sullivan*, 376 U.S. 254, 279-80 (1964). But Willis fails to identify an allegedly defamatory statement.

As to a wrongful/retaliatory discharge claim under Texas law, Texas does not "recognize a private whistleblower cause of action." *Austin v. HealthTrust, Inc. – The Hosp. Co.*, 967 S.W.2d 400, 401 (Tex. 1998) ("Our review of legislative action in the employment-at-will area leads us to conclude that it would be unwise for this Court to expand the common law because to do so would essentially eclipse more narrowly-crafted statutory whistleblower causes of action.").

In fact, as Willis does not allege that he had an employment contract with Western, "[u]nder Texas law, the employment-at-will doctrine governs," and "an

employer may terminate an employee for good or bad cause, or for no cause at all." *Blackshire v. Tradestar, Inc.*, No. 3:11-cv-677-K-BF, 2011 WL 5334582, at *2 (N.D. Tex. Oct. 7, 2011) (citations omitted), *rec. accepted*, 2011 WL 5346296 (N.D. Tex. Nov. 3, 2011).

"There are, of course, some judicial and statutory exceptions to the employment-at-will doctrine. For instance, Texas courts allow an employee to sue his employer if he was terminated only because of his failure to perform an illegal act, or if he was discharged so that his employer could avoid paying benefits in his pension fund." *Id.* (citations omitted)).

And, more applicable here, under Texas law, "it is considered unlawful for an employer to terminate an employee because of their race, color, disability, religion, sex, national origin or age." *Id.* (citing *Austin*, 967 S.W.2d at 402 (citing, in turn TEX. LAB. CODE § 21.051)). But "[c]ourts analyze Title VII and parallel claims under the Texas Labor Code identically." *Cornett v. United Airlines*, A-18-CV-698-LY, 2019 WL 453365, at *3 n.2 (W.D. Tex. Feb. 5, 2019) (citations omitted). So, for the reasons stated above as to why Willis has not alleged plausible claims under Title VII, he has not alleged plausible claims under the Texas Labor Code.

### Leave to Amend

The time to file objections to the recommendations that Willis has failed to allege plausible claims (further explained below) allows him an opportunity to explain how he would cure the deficiencies identified above (that is provide enough facts to plausibly allege all elements of each claim) and thus show the Court that this case

should not be dismissed with prejudice at this time and that the Court should instead grant Willis leave to amend his claims. *See Scott v. U.S. Bank Nat'l Ass'n*, 16 F.4th 1204, 1209 (5th Cir. 2021) (per curiam) ("A court should freely give leave to amend when justice so requires, FED. R. CIV. P. 15(a)(2), but a movant must give the court at least some notice of what his or her amendments would be and how those amendments would cure the initial complaint's defects. *Thomas v. Chevron U.S.A., Inc.*, 832 F.3d 586, 590 (5th Cir. 2016). If the plaintiff does not provide a copy of the amended complaint nor explain how the defects could be cured, a district court may deny leave. *McKinney v. Irving Indep. Sch. Dist.*, 309 F.3d 308, 315 (5th Cir. 2002) (affirming denial of leave to amend where plaintiffs 'failed to amend their complaint as a matter of right, failed to furnish the district court with a proposed amended complaint, and failed to alert both the court and the defendants to the substance of their proposed amendment').").

But, if Willis fails to show that leave to amend should be granted, the Court should dismiss this case with prejudice.

## Remaining Motions

### I.    The Court should deny Willis's motion for summary judgment.

For all the reasons reflecting that Willis's allegations are deficient, he cannot prevail on a motion for summary judgment in his favor, which requires that he "establish beyond peradventure all of the essential elements of [each claim]." *Hughes v. Dillard, Inc.*, No. 3:09-cv-218-D, 2009 WL 4279414, at *3 (N.D. Tex. Nov. 30, 2009) (quoting *Bank One, Tex., N.A. v. Prudential Ins. Co. of Am.*, 878 F. Supp. 943, 962 (N.D. Tex. 1995) (quoting, in turn, *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1194 (5th

Cir. 1986)); internal quotation marks omitted).

**II.    The Court should grant Western's motion to dismiss under Rules 12(b)(4) and 12(b)(5), vacate the Clerk's entry of default, and deny Willis's motion for default judgment.**

Service of process is "fundamental to any procedural imposition on a named defendant" and is therefore "the official trigger for responsive action by an individual or entity named defendant." *Murphy Bros., Inc. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344, 350, 353 (1999). Consequently, "[a] federal court is without personal jurisdiction over a defendant unless the defendant has been served with process in accordance with Federal Rule of Civil Procedure 4." *Naranjo v. Universal Sur. of Am.*, 679 F. Supp. 2d 787, 795 (S.D. Tex. 2010) (citing *Omni Capital Int'l, Ltd. v. Rudolf Wolff & Co.*, 484 U.S. 97, 104 (1987)).

Both Rules 12(b)(4) and 12(b)(5) "challenge the sufficiency of service of the summons and complaint." *Bernard v. Grefer*, Civ. A. No. 14-887, 2015 WL 13532582, at *1 (E.D. La. Mar. 17, 2015). "Rule 12(b)(4) challenges the form of the process and the contents of the summons, specifically its noncompliance with Rule 4(b)." *Id.* (citing *Gartin v. Pharm. Cos., Inc.*, 289 F. App'x 688, 691 n.3 (5th Cir. 2008) (per curiam)). While Rule 12(b)(5) "permits a challenge to the method of service attempted by the plaintiff, or the lack of delivery of the summons and complaint." *Naranjo*, 679 F. Supp. 2d at 795 (quoting *Neely v. Khurana*, No. 3:07-cv-1344-D, 2008 WL 938904, at *2 (N.D. Tex. Apr. 7, 2008)).

"Once the validity of service has been contested, the plaintiff bears the burden of establishing its validity." *In re Katrina Canal Breaches Litig.*, 309 F. App'x 833, 835 (5th Cir. 2009) (per curiam) (citing *Carimi v. Royal Carribean Cruise Line, Inc.*,

959 F.2d 1344, 1346 (5th Cir. 1992)). And a plaintiff's *pro se* status does not excuse a failure to properly effect service of process. *See Sys. Signs Supplies v. U.S. Dep't of Justice*, 903 F.2d 1011, 1013 (5th Cir. 1990).

Similarly, before the Court may grant default judgment, it must examine the means that the plaintiff employed to serve the defendant, as proper service is a prerequisite to obtaining either default or default judgment: "[A] defendant can not make an appearance for purposes of [Federal Rule of Civil Procedure] 55(b)(2) until after the plaintiff effects service and the defendant becomes susceptible to default." *Rogers v. Hartford Life & Accident Ins. Co.*, 167 F.3d 933, 937 (5th Cir. 1999).

Simply put, "[u]ntil [a defendant] is properly served," the plaintiff "cannot obtain a default judgment." *Thompson v. Johnson*, 348 F. App'x 919, 923 (5th Cir. 2009) (per curiam) (citations omitted); *see, e.g., Richardson v. Avery*, No. 3:16-cv-2631-M-BH, 2016 WL 7803155, at *2 (N.D. Tex. Dec. 22, 2016) ("The docket does not reflect that compliance with the requirements of Rule 4 for service of process. Until he has been properly served, 'the defendant has no duty to answer the complaint and the plaintiff cannot obtain a default judgment.' Absent proper service of process, a court lacks personal jurisdiction over the defendant, and any default judgment against the defendant would be void." (cleaned up; quoting *Rogers*, 167 F.3d at 937)), *rec. accepted*, 2017 WL 213056 (N.D. Tex. Jan. 17, 2017).

Willis fails to establish both that service was valid and that Western was subject to default. His use of certified mail implies that he attempted to perfect service under Texas law, *see* FED. R. CIV. P. 4(e)(1); FED. R. CIV. P. 4(h)(1)(A), which provides

for service by registered or certified mail, with return receipt requested, *compare Gilliam v. Cnty. of Tarrant*, 94 F. App'x 230, 230 (5th Cir. 2004) (per curiam) (observing that "the use of certified mail is not sufficient to constitute 'delivering' under Rule 4" (citing *Peters v. United States*, 9 F.3d 344, 345 (5th Cir. 1993))), *with* TEX. R. CIV. P. 106(a)(2) ("Unless the citation or an order of the court otherwise directs, the citation shall be served by any person authorized by Rule 103 by mailing to the defendant by registered or certified mail, return receipt requested, a true copy of the citation with a copy of the petition attached thereto."); *see also Caceres-Mejia v. Watson*, 718 F. App'x 307, 309 (5th Cir. 2018) (per curiam) ("Service by mail is not expressly permitted by Federal Rule of Civil Procedure 4; however, an individual may be served by 'following state law for serving a summons in an action brought in courts of general jurisdiction in the state where the district court is located or where service is made.'" (quoting FED. R. CIV. P. 4(e)(1))); *Cross v. Grand Prairie*, No. 3:96-cv-446-P, 1998 WL 133143, at *6 (N.D. Tex. Mar. 17, 1998) ("Although Rule 4(e)(1) authorizes service pursuant to Texas law, absent prior authorization by the trial court, the only methods of service permitted in Texas are service in person or by registered mail." (citing TEX. R. CIV. P. 106(a))).

As to persons authorized to serve process under Texas law, Texas Rule of Civil Procedure 103 provides "that a sheriff, a constable, or any person authorized by law or by written order of the court not less than 18 years of age may serve any process, '[b]ut *no person who is a party* to or interested in the outcome of the suit may serve any process in that suit.'" *Blanton-Bey v. Carrell*, No. H-09-3697, 2010 WL 1337740,

at *2 (S.D. Tex. Mar. 26, 2010) (quoting Tᴇx. R. Cɪᴠ. P. 103; emphasis added by *Blanton-Bey*); *see also Lucky v. Haynes*, No. 3:12-cv-2609-B, 2013 WL 3054032, at *2 (N.D. Tex. June 18, 2013) ("Upon amendment of the relevant [Texas] rules, federal district courts in Texas interpreting Texas Rule 103 have found that the clerk of the court or one of the three authorized persons in Rule 103 can serve process by certified mail." (citations omitted)).

Texas law also requires that particular information be included in the return of service, such as the address served and the date of service or attempted service, *see* Tᴇx. R. Cɪᴠ. P. 107(b), and "when certified mail has been selected as the method of service, Texas law further requires that the return receipt be signed by the addressee," *Lucky*, 2013 WL 3054032, at *3 (citing Tᴇx. R. Cɪᴠ. P. 107(c); *Keeton v. Carrasco*, 53 S.W.3d 13, 19 (Tex. App. – San Antonio 2001, pet. denied)).

The evidence that Willis has provided the Court, *see* Dkt. Nos. 10, 11, does not reflect that service was proper under Texas law. There is no evidence, for example, that service was attempted by an authorized person, and such a deficiency means that dismissal under Rule 12 is proper and that the defendant has not made "an appearance for purposes of Rule 55(b)(2)" and is currently not "susceptible to default." *Rogers*, 167 F.3d at 937.

## Recommendation

The Court should grant Defendant Western Power Sports, Inc.'s motions to dismiss [Dkt. Nos. 14, 18], vacate the Clerk's entry of default [Dkt. No. 12], deny Plaintiff Marcus L. Willis's motions, including for default and summary judgment

[Dkt. Nos. 11, 15, 25, 26], and dismiss this lawsuit with prejudice unless, within the time to file objections to these recommendations, Willis satisfactorily shows that he can amend his complaint to allege a plausible claim.

A copy of these findings, conclusions, and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of these findings, conclusions, and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions, and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

DATED: May 17, 2023

_____

DAVID L. HORAN
UNITED STATES MAGISTRATE JUDGE